**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DRIVER OPPORTUNITY PARTNERS I, LP,<br><br>   Plaintiff,<br><br>  v.<br><br>REPUBLIC FIRST BANCORP, INC.,<br><br>   Defendant. | CIVIL ACTION<br>NO. 2:22-cv-01694-PD |

**RESPONSE ON BEHALF OF REPUBLIC FIRST BANCORP, INC., IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to the Court's May 6, 2022 Order (Doc. No. 13), Republic First Bancorp, Inc. ("**FRBK**") submits the following response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The substance of the response appearing herein was prepared solely by counsel for Directors Hill, Flocco, Spevak, and Tierney ("**Incumbent Directors**"). Directors Andrew B. Cohen, Lisa R. Jacobs, Harry D. Madonna, and Harris Wildstein did not participate in the drafting of this response, did not review the response before it was filed, and do not join in it. Directors Cohen, Jacobs, Madonna and Wildstein are represented by their own, separate counsel.

Dated: May 9, 2022   Respectfully submitted,

**STEVENS & LEE**

*/s/Stacey A. Scrivani*
Stacey A. Scrivani, Esq. (Pa. I.D. No. 84275)
111 N. Sixth Street
P.O. Box 679
Reading, PA 19603 0679
(610) 478 2086
stacey.scrivani@stevenslee.com

Nicholas H. Pennington, Esq. (Pa. I.D. No. 307073)
620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
(610) 205-6352
nicholas.pennington@stevenslee.com

*Attorneys for Defendant Republic First Bancorp, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     STATEMENT OF FACTS ............................................................................3

III.    ARGUMENT.................................................................................................7

      1.    DRIVER'S MOTION IS BASED ON A FALSE PREMISE. ...............................7

      2.    THIS COURT CANNOT COMMAND FRBK TO HOLD ITS ANNUAL
           MEETING IN VIOLATION OF FEDERAL LAW. ..........................................7

      3.    DRIVER CANNOT SATISFY THE BURDEN TO DEMONSTRATE
           ENTITLEMENT TO MANDATORY INJUNCTIVE RELIEF. ..........................11

          a.    Driver Cannot Succeed On The Merits Of Its Claim And Its
               Right To The Requested Relief Is Not Indisputably Clear.......12

      4.    DRIVER WILL NOT SUFFER ANY IRREPARABLE HARM.........................19

      5.    GRANTING IMMEDIATE RELIEF WILL RESULT IN EVEN GREATER
           HARM TO FRBK AND ITS SHAREHOLDERS. .........................................21

      6.    THE PUBLIC INTEREST DOES NOT FAVOR DRIVER'S REQUESTED
           RELIEF. ...............................................................................................23

IV.     DISCUSSION REGARDING THE PROPER DEFENDANT(S)...............25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ash v. GAF Corp.*,
723 F.2d 1090 (3d Cir. 1983) ......................................................................10, 22

*Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*,
528 F.3d 176 (3d Cir. 2008) ................................................................................12

*Bimbo Bakeries USA, Inc. v. Botticella*,
613 F.3d 102 (3d Cir. 2010) ................................................................................11

*Blasius Corp. v. Atlas Corp*.,
564 A.2d 651 (Del. Ch. 1988) ......................................................................15, 16

*C.G. by & through P.G. v. Saucon Valley Sch. Dist.*,
5:21-CV-03956, 2021 WL 5399920 (E.D. Pa. Nov. 18, 2021)..........................11

*Capital Real Estate Inv'rs Tax Exempt Fund Ltd. P'ship v. Schwartzberg*,
917 F. Supp. 1050 (S.D.N.Y. 1996) ...................................................................22

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ...............................................................................20

*Cooke v. Teleprompter Corp.*,
334 F. Supp. 467 (S.D.N.Y. 1971) ...............................................................14, 24

*Danaher Corp. v. Chi. Pnuematic Tool Co.*,
1986 WL 7001 (S.D.N.Y. June 19, 1986) .....................................................13, 14

*Garfield v. U.S. ex rel. Turner*,
31 App. D.C. 332 (D.C. Cir. 1908).......................................................................8

*In re General Election for District Justice*,
543 Pa. 216, 670 A.2d 629 (1996).......................................................................18

*Gidatex, S.R.L. v Campaniello Imports, Ltd.*,
13 F. Supp. 2d 417 (S.D.N.Y. 1998) ..................................................................20

*Jewelcor Mgmt., Inc. v. Thistle Group Holdings*,
    Co., 60 Pa. D. & C.4th 391 (Pa. Ct. Com. Pl. 2002) ..............................13, 14, 25

*Kidsco Inc. v. Dinsmore*,
    674 A.2d 483 (Del. Ch. 1995), *aff'd*, 670 A.2d 1338 (Del. 1995) .........14, 19, 25

*Lerman v. Diagnostic Data, Inc.*,
    421 A.2d 906 (Del. Ch. 1980) ......................................................................14, 16

*Mercier v. Inter-Tel (Delaware), Inc.*,
    929 A.2d 786 (Del. Ch. 2007) ...........................................................................16

*In re MONY Group, Inc. S'holder Litig.*,
    853 A.2d 661 (Del. Ch. 2004) ............................................................. 14, *passim*

*Osborne v. Corning Nat. Gas Corp.*,
    No. 09-CV-6387T, 2009 WL 2413671 (W.D.N.Y. Aug. 4, 2009) ....................20

*Punnett v. Carter*,
    621 F. 2d 578 (3d Cir. 1980) .......................................................................11, 12

*Rosenbaum v. CytoDyn Inc.*,
    No. CV 2021-0728-JRS, 2021 WL 4775140 (Del. Ch. Oct. 13,
    2021) ...................................................................................................................16

*Scattergood v. Perelman*,
    No. CIV. A. 90-3451, 1990 WL 72801 (E.D. Pa. May 29, 1990).....................19

*Sec. & Exch. Comm'n v. May*,
    134 F. Supp. 247 (S.D.N.Y. 1955), *aff'd*, 229 F.2d 123 (2d Cir.
    1956) ...................................................................................................................24

*Sec. & Exch. Comm'n v. Parklane Hosiery Co., Inc.*,
    558 F.2d 1083 (2d Cir. 1977) ............................................................................22

*Stahl v. Apple Bancorp, Inc.*,
    579 A.2d 1115 (Del. Ch. 1990) .......................................................13, 16, 17, 25

*Steinberg v. Am. Bantam Car Co.*,
    76 F. Supp. 426 (W.D. Pa. 1948)........................................................15, 21, 25

*Synthes, Inc. v. Gregoris*,
    228 F. Supp. 3d 421 (E.D. Pa. 2017)................................................................11

*T.J. Smith and Nephew Ltd. v. Consolidated Med. Equip.,Inc.*,
   821 F.2d 646 (Fed. Cir. 1987) .............................................................................21

*The Media Group, Inc. v. Ontel Products Corp.*,
   No. Civ. 300............................................................................................................20

*Tough Traveler Ltd. v. Outbound Products*,
   60 F.3d 964 (2d Cir. 1995) ...................................................................................20

*Trinity Wall St. v. Wal-Mart Stores, Inc.*,
   792 F.3d 323 (3d Cir. 2015), *cert. dismissed*, 136 S. Ct. 499 (Nov.
   12, 2015) ..................................................................................................................9

*In re Trump Hotels S'holder Derivative Litig.*,
   96 CIV. 7820 DAB, 2000 WL 1371317 (S.D.N.Y. Sept. 21, 2000)..................22

*United Brotherhood of Carpenters and Joiners of America, Local 261
   v. Pennsylvania Human Relations Commission*,
   693 A.2d 1379 (Pa. Cmwlth. 1997).....................................................................18

*Univ. of Pittsburgh v. Champion Prod. Inc.*,
   686 F.2d 1040 (3d Cir. 1982) ..............................................................................18

*WNH Invs., LLC v. Batzel*,
   1995 WL 1799134 (Del. Ch. July 20, 1995) ......................................................23

**Statutes**

15 Pa.C.S. § 1704(b) ..........................................................................................17, 21

15 Pa. C.S. § 1755(a) ...............................................................................................17

15 Pa. C.S. § 1793(a) ...............................................................................................12

Exchange Act ...........................................................................................................22

Exchange Act Rule 14a-2(b)(1)(i) ...........................................................................23

Exchange Act Rule 14a-3(13).............................................................................10, 22

Exchange Act Rule 14a-3(b).....................................................................................20

Rule 14a-3(13) ...........................................................................................................9

Rules 14a-3 and 14c-3..................................................................................................8

Rule 14a-3(b) and Rule 14c-3(a) under the Exchange Act.........................................9

**Other Authorities**

17 C.F.R. § ...................................................................................................................9

17 C.F.R. § 200.30-l(f)(18)..........................................................................................9

17 C.F.R. § 240.14a-3 ...........................................................................................4, 6

17 C.F.R. § 240.14a-3(b) .............................................................................4, 6, 7, 22

17 C.F.R. § 240.14c-3 ...........................................................................................4, 6

Federal Proxy Rules, 10 DEL. L. REV. 213, 225-27 (2008) ....................................9

## MEMORANDUM OF LAW

Pursuant to the Court's May 6, 2022 Order (Doc. No. 13), Republic First Bancorp, Inc. ("**FRBK**" or "**Company**") submits the following response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (the "**Motion**").  The substance of the response appearing herein was prepared solely by counsel for Directors Hill, Flocco, Spevak, and Tierney ("**Incumbent Directors**"). Directors Andrew B. Cohen, Lisa R. Jacobs, Harry D. Madonna, and Harris Wildstein did not participate in the drafting of this response, did not review the response before it was filed, and do not join in it.  Directors Cohen, Jacobs, Madonna and Wildstein are represented by their own, separate counsel.

## I.      INTRODUCTION[1]

Driver, an activist hedge fund, is engaged in a campaign to install three directors of its choosing on FRBK's Board of Directors ("**Board**").  Driver asks this Court to enter a temporary restraining order and mandatory preliminary injunction that will give its nominees an unfair advantage in FRBK's next election for seats on FRBK's Board, which will be held at FRBK's 2022 annual shareholder meeting ("**Annual Meeting**").   Driver's claims and Motion are unmoored to the facts, misapprehend or misstate the law, and seek remedies that do not exist under

---

[1] The Incumbent Directors are represented by the law firm of Holland & Knight LLP.  Carolyn Short (PA Bar ID. No. 38199) is counsel for the Incumbent Directors, and prepared the substance of this Memorandum of Law on their behalf pursuant to the Court's order.

Pennsylvania law (and would be contrary to federal securities law) against a party

that was tactically selected but is substantively inappropriate to the claims made.

Driver's Motion should be denied for at least the following reasons:

- Driver presumes – wrongly – that either FRBK's management or the Board's audit committee (and not the full Board) unilaterally postponed the Company's Annual Meeting. In fact, FRBK's full Board postponed the Company's Annual Meeting to comply with federal laws and regulations governing proxy solicitation. The postponement was not an *ultra vires* act of FRBK's management or the Board's audit committee.

- Compelling an Annual Meeting on the time frame that Driver demands would violate all governing law and controlling agreements – including Pennsylvania law, federal securities law and FRBK's bylaws – and would disenfranchise FRBK's shareholders by depriving them of information that is highly material to the upcoming election and the opportunity to vote against Driver's candidates.

- Driver has otherwise failed to satisfy the extremely high threshold for the mandatory injunctive relief it seeks.

Driver wants to force an immediate shareholder vote in which Driver can solicit

proxy votes from other shareholders for Driver's slate of Board candidates, while

FRBK and its slate are prohibited from doing so and before a current independent

investigation has had time to clear FRBK's slate of alleged wrongdoing, and forcing

shareholders who want to vote for FRBK's Board-approved slate of candidates

would have to appear in person at the Company's Annual Meeting to do so. The

only interests served by Driver's lawsuit and Motion are Driver's interests. Granting

the relief requested not only would violate controlling law, but also would harm

FRBK's shareholders by requiring them to participate in a vote that is not fair.

## II.   STATEMENT OF FACTS

FRBK has an eight-member Board.  See Declaration of Barry Spevak (the "**Spevak Dec.**"), ¶ 3, attached hereto as **Exhibit A**.  FRBK's directors are elected by vote of the Company's shareholders.  *See* FRBK's Amended and Restated By-Laws (the "**Bylaws**") at Art II, § 2, 4.  FRBK's directors are divided into three classes and each class serves staggered three-year terms.  *Id.* at §2.  Three Board seats are up for election at FRBK's 2022 annual meeting.  Spevak Dec., ¶ 9.  Shareholders elect directors to FRBK's board at this meeting, typically through a proxies.  *Id.*[2]

The Incumbent Directors comprise four of the eight members of FRBK's current Board. *See* Spevak Dec., ¶ 3.  Three of the Incumbent Directors are nominated by FRBK's Board process for the next election of directors, which will take place at the 2022 Annual Meeting. *Id.*, ¶ 9.  On or about November 23, 2021, Driver submitted a competing slate of candidates for the Board seats that are up for election in 2022. *Id.*, ¶ 10. FRBK's slate and Driver's slate are the only two competing slates for seats on FRBK's Board that are up for election this year.  *Id.*

Before conducting an annual meeting, FRBK is required by law to take certain actions and make certain disclosures to its shareholders, including, *e.g*., providing its shareholders with two years' worth of certified financial statements (through its

---

[2] A proxy election is a ballot that is case by one person or firm on behalf of another. Proxy votes are used by shareholders who may not be able to attend a shareholder meeting, or who may choose not to vote on a particular issue.  A person designated as a proxy will cast a proxy vote in line with the shareholder's directions as written on their proxy card.

filing of a Form 10-K with the U.S. Securities and Exchange Commission ("**SEC**"))
and providing its shareholders with sufficient advance notice of the scheduled
meeting.  *See* SEC rules 17 C.F.R. § 240.14a-3 ("Rule 14a-3") and 17 C.F.R. §
240.14c-3 ("Rule 14c-3").  In order to conduct its Annual Meeting on May 10, 2022,
FRBK had to file its Form 10-K with certified financial statements for its past two
fiscal years by no later than March 31, 2022.  17 C.F.R. § 240.14a-3(b).

On March 4, 2022, four members of the FRBK Board, Harry Madonna,
Andrew B. Cohen, Lisa Jacobs, and Harris Wildstein (collectively, the "**Dissident
Directors**"), issued a press release alleging misconduct on the part of the Incumbent
Directors (the "**Press Release**"). *Id.*, ¶ 11.  Four days later, a group of shareholders
led by George E. Norcross, III (who is currently conducting a hostile takeover of
FRBK) filed a Complaint in the Court of Common Pleas of Philadelphia County,
Pennsylvania against FRBK and the Incumbent Directors (the "**Norcross
Litigation**"), urging that Court to enjoin the defendants from (among other things)
amending some of the Company's executive compensation agreements in ways that
the Company is not even contemplating, based entirely on the Dissident Directors'
unfounded allegations in their Press Release. *Id.*, ¶ 16; *Norcross et al. vs. Republic
First Bancorp, Inc. et al.*, No. 220300955 (Pa. Com. Pl. May 2022 Term).[3]  Norcross

---

[3] The Incumbent Directors have filed preliminary objections to the Norcross Plaintiffs' Complaint for failure to state
a cognizable claim (among other things). *Norcross et al. vs. Republic First Bancorp, Inc. et al.*, No. 220300955 (Pa.
Com. Pl. May 2022 Term).  The Incumbent Directors also categorically deny the allegations made by the Dissident
Directors in their Press Release.  Spevak Dec., ¶ 12.

has also filed proxy materials supporting Driver, asserting that river's slate would be more amenable to his takeover proposal.

In March 31, 2022, FRBK's public accountants, Crowe LLP (**"Crowe"**), advised FRBK's Audit Committee that Crowe would not issue an opinion or certify FRBK's consolidated financial statements until FRBK engaged an independent, qualified and reputable law firm to conduct an independent investigation into the allegations made.  Spevak Dec., ¶ 15–17.  Crowe's refusal to certify FRBK's financial statements until FRBK conducted an investigation into the allegations raised in the Norcross Litigation left FRBK unable to file a Form 10-K by March 31, 2022, as was required in order for FRBK to conduct its Annual Meeting on May 10, 2022, as scheduled.  *Id.*, ¶ 16.  On April 1, 2022, FRBK's Board approved a Form 8-K (the "**8-K**").  *See* FRBK 8-K (Apr. 1, 2022, 5:15 PM), *available at* https://sec.report/Document/0001437749-22-008072/ (last visited Apr. 2, 2022).

FRBK's Board – including both the Incumbent Directors and Dissident Directors – approved this 8-K without objection.  Spevak Dec., ¶ 17.  It was not an unauthorized or *ultra vires* undertaking of FRBK's management or the Audit Committee.  *Id.*, ¶¶ 17–19.  The Audit Committee subsequently approved the appointment of WilmerHale.  *Id.*, ¶ 20.  FRBK's Board agreed to postpone the Annual Meeting until after the completion of that investigation.  *Id.*, ¶¶ 19–21.  Even the fastest investigation of this sort typically take weeks to complete.  *Id.*, ¶ 21.  The

investigation is already underway and should be permitted to run its course before shareholders are asked to vote at the Annual Meeting. *Id.*, ¶ 25–26.

Until the investigation is complete, Crowe will not certify FRBK's financial statements for the fiscal year ending December 31, 2021. *Id.*, ¶¶ 15–16. FRBK cannot legally conduct its Annual Meeting until it provides its shareholders with audited financial statements. See 7 C.F.R. § 240.14a-3; 17 C.F.R. § 240.14c-3. Neither FRBK nor the FRBK's proposed Board nominees themselves can solicit shareholder proxies to vote for the Board-approved slate of director candidates until FRBK's audited financial statements are issued. *Id*. Driver is free to solicit, and has been soliciting, proxy votes from shareholders in favor of its slate of Board candidates while FRBK's investigation into the allegations of the Press Release and the Norcross Litigation is ongoing. Spevak Dec. ¶ 22. Driver now wants this Court to force FRBK to hold its Annual Meeting before the end of June 2022. Mot. at 19. Doing so would violate federal securities law mandating that shareholders receive two years' worth of audited financial statements prior to a publicly traded company's annual meeting. 17 C.F.R. § 240.14a-3(b). It would force FRBK's shareholders to vote on Board candidates without the outcome of the independent investigation into the allegations against the Incumbent Directors (an unfair election).

## III.   ARGUMENT

### 1.   Driver's Motion Is Based on a False Premise.

Driver alleges – with no evidentiary support – that FRBK's management, rather than the Company's Board, postponed FRBK's Annual Meeting *ultra vires* in violation of FRBK's Amended and Restated By-Laws (the "**Bylaws**").  *See, e.g.,* Mot., at 9 & Ex. 1.  Spevak Dec., ¶ 16–19.  FRBK's *full Board* – including both its Incumbent Directors and its Dissident Directors – approved the 8-K announcing the delay of the Company's Annual Meeting without objection. *Id.* ¶¶ 17–18.

Driver concedes that if FRBK's Board authorized the postponement of the Annual Meeting, Driver would not be entitled to the injunctive relief it seeks. Compl., ¶ 61 ("[t]he Board has not rescheduled the May 10 meeting and only the Board has the power to change that date."); *see also* Mot., at 11. ("The Board, not the audit committee or management, has the sole right and responsibility to set the annual meeting.").  FRBK's full Board authorized the postponement of the Annual Meeting without objection.  Driver's Motion should therefore be denied.

### 2.   This Court Cannot Command FRBK to Hold its Annual Meeting in Violation of Federal Law.

Driver seeks to compel FRBK to convene its annual meeting either tomorrow (May 10, 2022) or sometime before June 29, 2022.  Doing so would violate federal securities law, specifically 17 C.F.R. § 240.14a-3(b), and expose FRBK to possible enforcement action by the SEC.  Section 240.14a-3(b) requires FRBK to publish

audited annual financial statements before holding an annual meeting.  Failure to do so could expose FRBK to possible enforcement action by the SEC.  Crowe will not issue those statements until WilmerHale completes its independent investigation. Spevak Dec. ¶ 15–16, 21.  Until the investigation is completed and Crowe issues its audit report with respect to the financial statements FRBK is required to provide its shareholders in connection with any proxy solicitation, FRBK cannot legally hold its annual meeting in accordance with federal securities laws.

Although "a court will restrain by injunction the performance of an unlawful act, or command by writ of mandamus the performance of a lawful act; . . . *it will not restrain the performance of a lawful act, or command the performance of an unlawful act*."  *Garfield v. U.S. ex rel. Turner*, 31 App. D.C. 332, 337 (D.C. Cir. 1908) (emphasis added)  This Court cannot compel FRBK to violate federal law by holding an annual meeting before it issues its audited annual financial statements (which presupposes completion of the independent investigation).   Driver's assertion that "the Company is free to issue its proxy statement and proceed with election" (Mot., at 15) is contrary to the law.

SEC Rules 14a-3 and 14c-3 require registered companies to provide stockholders with audited financial statements (by filing an Annual Report on Form 10-K), in addition to other detailed disclosures, (a) before an annual meeting for the election of directors, and/or (b) before (or simultaneously with) a company's

8

solicitation of proxy shareholder votes for Board candidates. These rules ensure that stockholders receive material information to vote at annual meetings.[4]

In a contested election, Rule 14a-3(13) requires companies to provide their shareholders with audited annual financial statements at least twenty days before their annual meeting.  17 C.F.R. § (14a-3(13) (requiring that, in the case of a contested proxy election, the registered company must file its Form 10-K at least twenty days before the annual meeting). FRBK cannot commit to providing the requisite Annual Report on Form 10-K at least twenty calendar days prior to Driver's requested shareholder meeting date.  Spevak Dec. ¶ 24.  The only way around this requirement would be to seek and obtain an exemption directly from the SEC,[5] which, as a practical matter, will not be granted under the circumstances here.    The delay here in completing the audit arose because of self-dealing allegations against the Incumbent Directors. The results of that investigation are material to shareholders and the SEC is unlikely to permit FRBK or its board nominated slates to solicit proxies until these allegations are resolved.

---

[4] *See* J. Travis Laster & Michelle D. Morris, How to Avoid a Collision Between the Delaware Annual Meeting Requirement and the Federal Proxy Rules, 10 DEL. L. REV. 213, 225-27 (2008)  (discussing legislative history); *accord, e.g., Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 335 (3d Cir. 2015), *cert. dismissed*, 136 S. Ct. 499 (Nov. 12, 2015).

[5] The SEC has created a mechanism for companies to attempt to seek an exemption from the requirement that they publish audited financial statement before holding an annual meeting.  Specifically, SEC Release No. 34-57262, issued in 2008, recognizes a company's potential "dilemma of being required to hold a meeting . . . when they are unable to deliver current audited financial statements," which would require those companies to violate "the requirements of Rule 14a-3(b) and Rule 14c-3(a) under the Exchange Act." SEC Release 34-57262 (Feb. 7, 2008), codified at 17 C.F.R. § 200.30-l(f)(18).  If a court orders a company to hold a meeting in potential violation of SEC Rules, the SEC Release allows the company to ask the SEC for a discretionary exemption from the requirement to issue audited financial statements before holding an annual meeting or soliciting proxies.

Driver's demand that FRBK conduct its Annual Meeting before it can produce an Annual Report on Form 10-K and solicit proxy shareholder votes in defense of its Board-approved slate of directors runs directly contrary to federal securities laws, a fundamental premise of which (as reflected in the above-cited Exchange Act Rule 14a-3(13)) is that companies must give shareholders all material information, including an Annual Report on Form 10-K, before asking them to take a fundamental action such as granting a proxy, providing a written consent, or making an investment decision. *See Ash v. GAF Corp.*, 723 F.2d 1090, 1093-1094 (3d Cir. 1983) (Section 14(a) "was intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.'") (internal quotations and citations omitted).

If this Court compels FRBK to hold its Annual Meeting prematurely, the Court would deprive FRBK's shareholders of information necessary and material to their decision regarding which slate of Board candidates to vote for.  It also would materially prejudice those shareholders who want to vote for the Board-approved candidates, as those shareholders would have to attend the Annual Meeting in person to cast their votes (unlike Driver's supporters). The law does not permit such extraordinary action.  The law mandates that the Annual Meeting must not be

compelled to occur until FRBK can complete the independent investigation, pass an audit, and issue a form 10-K in compliance with federal securities laws.

### 3.    Driver Cannot Satisfy The Burden To Demonstrate Entitlement To Mandatory Injunctive Relief.

Even apart from the fact that Driver is demanding relief this Court cannot lawfully grant, Driver has failed to meet the test for a mandatory injunctive relief. "Injunctive relief is an *extraordinary* remedy, which the Court may grant only upon *a clear showing* that the plaintiff is entitled to such relief." *See e.g.*, *Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 428 (E.D. Pa. 2017) (internal quotation marks and citation omitted) (emphasis added). As such, Driver "bears a heavy burden on [its] motion for a preliminary injunction." *Punnett v. Carter*, 621 F. 2d 578, 588 (3d Cir. 1980) (emphasis added). In determining whether to grant a preliminary injunction, courts usually consider whether the party seeking the injunction has satisfied four factors: "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

Because Driver seeks a *mandatory* injunction compelling FRBK to hold its Annual Meeting, it "must show 'a *substantial* likelihood of success on the merits and that [its] right to relief is *indisputably* clear." *C.G. by & through P.G. v. Saucon Valley Sch. Dist.*, 5:21-CV-03956, 2021 WL 5399920, at *5 (E.D. Pa. Nov. 18,

2021) (quoting *Dunmore Sch. Dist. v. Pennsylvania Interscholastic Athletic Ass'n*, 505 F. Supp. 3d 447, 457 (M.D. Pa. 2020)) (emphasis added). Additionally, Driver must also "meet a *higher* standard of showing irreparable harm". *Bennington Foods LLC v. St. Croix Renaissance, Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (emphasis added).[6] Driver cannot even remotely come near satisfying this heavy burden.

### a. Driver Cannot Succeed On The Merits Of Its Claim And Its Right To The Requested Relief Is Not Indisputably Clear.

#### i. FRBK's Board Rescheduled the Annual Meeting for a Proper and Legitimate Purpose.

Driver asserts that 15 Pa. C.S. § 1793(a) empowers this court to force FRBK to conduct its Annual Meeting at Driver's Request. Mot., at 9. Although 15 Pa. C.S. § 1793(a) grants a shareholder standing to seek injunctive relief under certain circumstances, none of those circumstances exist here. Nor do any of the cases cited by Driver demonstrate that 15 Pa. C.S. § 1793(a) may be invoked here. Driver argues, "[i]njunctive relief is appropriate when the board of directors acts to manipulate the annual meeting and election." Mot. at p. 11 (citing *Lerman v. Diagnostic Data, Inc.*, 421 A.2d 906, 914 (Del. Ch. 1980)).[7] Driver misinterprets the governing standard, however. Rescheduling a shareholder meeting for proper

---

[6] *Punnett*, 621 F. 2d at 588 ("when the preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy.") (*citing United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)).

[7] Throughout the Motion, Driver seemingly cannot make up its mind as to whether it was aggrieved by acts of FRBK management or the board. *See, e.g.*, Mot. at ¶¶ 4, 48, 52, 61.

purpose, as the Board did here, is not an act of "manipulation."  FRBK's board simply has not engaged in any "*intentional* and *improper* infringement" of the rights of its shareholders - the standard set forth in *Jewelcor Mgmt., Inc. v. Thistle Group Holdings*, Co., 60 Pa. D. & C.4th 391 (Pa. Ct. Com. Pl. 2002) (emphasis added).[8]

**First**, Driver cannot succeed on the merits of its claim because neither FRBK nor the Incumbent Directors have acted with the intent of impairing, infringing, or impeding shareholder franchise. *Id.*  The Annual Meeting could not proceed under the governing law and was rescheduled by FRBK's board as set forth in the 8-K.  Spevak Dec., ¶ 16–18.  FRBK cannot legally hold its Annual Meeting until it produces  audited financial statements, which it cannot do until the investigation into the allegations made by its Dissident Directors and the Norcross Litigation plaintiffs is complete.   Driver's allegations of improper motive by some of the Incumbent Directors are purely speculative and Driver offers no evidence to support them

**Second**, the cases that Driver cites are inapposite.[9]  Here FRBK, the board, and more particularly, the Incumbent Directors, knew of Driver's completing slate

---

[8] That standard is consistent with Delaware law. *Stahl v. Apple Bancorp, Inc.*, 579 A.2d 1115, 1122 (Del. Ch. 1990) ("***The fundamental question***" on a motion for preliminary injunction as to the rescheduling of a  shareholder's meeting "may be expressed as whether the defendants have exercised corporate power inequitably. . . . *whether they have taken action for the purpose of impairing or impeding the effective exercise of the corporate franchise*.") (emphasis added).

[9] In *Aprahamian v. HBO & Co.*, the directors, after having designated the date for the annual meeting and having solicited proxies on their behalf, postponed the annual meeting *on the eve of the meeting* upon learning that they might be turned out of office. *See* 531 A.2d 1204, 1208 (Del. Ch. 1987).  Similarly, *Danaher Corp. v. Chi. Pnuematic Tool Co.*, 1986 WL 7001 (S.D.N.Y. June 19, 1986), involved the cancellation of an annual meeting just "days after [a shareholder group] made known its acquisition of a majority of the shares and its intention to seek representation on the board at the scheduled election of directors." *Id.* at *13. In *Lerman*,  the court held that a company bylaw setting an annual meeting was invalid where the bylaw would have completely prohibited a shareholder from mounting a proxy contest. 421 A.2d at 914. Finally, in *Jewelcor Mgmt., Inc.*,  the shareholder meeting at issue was not postponed

13

for months and took no actions to thwart it.  Driver can continue soliciting proxies without limitation during the pendency of the independent investigation (despite the fact that FRBK and FRBK's slate cannot do so). FRBK's shareholders are entitled to know the outcome of the investigation into the Dissident Directors' allegations against the Incumbent Directors, and to consider the Company's audited financial statements, before voting on the competing slates of Board candidates.  The Board's decision to postpone the Annual Meeting until the shareholders are given that information was an appropriate action.  *See, e.g., Cooke v. Teleprompter Corp.,* 334 F. Supp. 467, 473 (S.D.N.Y. 1971) ("A Court of Equity may, *and should*, postpone a shareholders meeting where the interests of justice would be served by allowing time for a shareholder to communicate to his fellow shareholders facts and circumstances, which if known, might result in a majority vote for a change in the Board of Directors."); *see also, e.g.*, *In re MONY Group, Inc. S'holder Litig.*, 853 A.2d 661, 676 (Del. Ch. 2004) ("in the proper circumstances, [postponement] can provide for a vote that is, for lack of a better term, *fuller and fairer*") (emphasis added); *Kidsco Inc. v. Dinsmore*, 674 A.2d 483, 495 (Del. Ch. 1995), *aff'd*, 670 A.2d 1338 (Del. 1995) (denying injunctive relief where bylaw amendment providing the board with an additional twenty-five days to call a special meeting was not enacted

---

but moved *forward* by two weeks with limited notice when the company's directors learned that a shareholder intended to solicit proxies in anticipation of the meeting. 60 Pa. D. & C.4th at 399.

for purposes of incumbent entrenchment or the primary purpose of impeding shareholder franchise).  The shareholders meeting was appropriately postponed for the plainly legitimate purposes of *protecting* the shareholder franchise.[10] Stockholders will not be able to "investigate the affairs of a corporation" until completion of the independent investigation.

### ii.   The Board Exercised Proper Business Judgment in Adjourning FRBK's Annual Meeting.

Driver urges the Court to view FRBK's decision to adjourn FRBK's Annual Meeting through the lens of special or strict scrutiny above that of business judgment deference and intermediate scrutiny. *See Blasius Corp. v. Atlas Corp*., 564 A.2d 651, 661 (Del. Ch. 1988) (holding that any action which has the "primary purpose" of impeding the exercise of stockholder franchise must have a compelling justification).  Driver cannot overcome the deficiencies of its claim by arguing that FRBK or its board should be subject this standard. That heightened standard is inapplicable here (although the Board's actions would have satisfied it in any event).

Strict scrutiny of the sort endorsed by *Blasius* in Delaware has never been recognized in Pennsylvania.  Even under *Blasius* and its progeny, strict scrutiny is

---

[10] Indeed, the United States District Court for the Western District of Pennsylvania has specifically held that "a court of equity [such as this one] should exercise its undoubted authority to supervise and control the corporate election" in matters "[w]here the stockholders are unable to investigate the affairs of a corporation, a sufficient length of time prior to the annual meeting of the stockholders, so as to secure the will of all before the election of directors." Steinberg v. Am. Bantam Car Co., 76 F. Supp. 426, 440 (W.D. Pa. 1948); see also  In re MONY Group, Inc. S'holder Litig., 853 A.2d at 676 (emphasis added) ("in the proper circumstances, [postponement] can provide for a vote that is, for lack of a better term, fuller and fairer") (emphasis added).

inappropriate under the present facts, as "courts will apply the exacting *Blasius* standard sparingly, and only in circumstances in which self-interested or faithless fiduciaries act to deprive stockholders of a *full and fair opportunity to participate in the matter*." *Rosenbaum v. CytoDyn Inc*., No. CV 2021-0728-JRS, 2021 WL 4775140, at \*14 (Del. Ch. Oct. 13, 2021) (quoting *In re MONY Gp. Inc. S'holder Litig*., 853 A.2d 661, 674 (Del. Ch. 2004)) (emphasis added).

When a decision to move a meeting is not the product of any intentional inequity or unfairness, but rather is one that facilitates a full and fair vote, the court will afford it business judgment deference. *In re MONY Grp., Inc. S'holder Litig*., 853 A.2d at 667. Directors may reschedule an imminent meeting when the directors want more time to communicate with and provide information to shareholders. *See Mercier v. Inter-Tel (Delaware), Inc*., 929 A.2d 786, 787 (Del. Ch. 2007). FRBK - at the direction of the board - postponed the Annual Meeting so that its shareholders may vote with the benefit of all material information relevant to the election.[11]

---

[11] In *Stahl v. Apple Bancorp, Inc.*, the court distinguished cases where the board action practically precluded stockholder action (*Schnell[11], Blasius, Lerman*) or "snatched" victory from an insurgent slate on the eve of the vote (*Aprahamian*), from those cases where the election process proceeded in a manner consistent with the company's bylaws and with the relevant corporation law. 579 A.2d 1115, 1123 (Del. Ch. 1990). The Court also rejected the application of strict scrutiny where board action did not preclude any shareholder from effectively voting and no proxies had been collected that awaited imminent counting. *Id*. at 1123. Here, FRBK's Board has acted according to the terms of its Bylaws and state and federal law. Driver's proposed slate of Board candidates is intact, no proxies yet collected or counted, and FRBK's shareholders will be able to vote for Board candidates once they know the outcome of the investigation and the Company's financial condition. It should also not be lost on the Court that Driver's purported concern over protecting shareholder voting rights against board members scheming to illegitimately entrench themselves does not square with Driver's insistence that the board vote be held as quickly as possible and without the benefit of the results of the independent investigation. This is because Driver wants to take advantage of this brief window during which allegations in a press release and an untested complaint have created the appearance of impropriety before those allegations can be investigated and dismissed as incredible.

### iii. The Board Postponed FRBK's Annual Meeting in Accordance with the Company's Bylaws and Applicable Law.

In its effort to compel a director vote during this brief window in which shareholders are less than fully informed about the candidates up for election to the Board, Driver obscures certain aspects of Pennsylvania law that make clear they have no chance of success. Contrary to Driver's suggestion, 15 Pa. C.S. § 1755(a) makes no mention of notice to the shareholders. It states only as follows:

> *The bylaws of a business corporation may provide for* the number and *the time of meetings of shareholders*. Except as otherwise provided in the articles, at least one meeting of the shareholders shall be held in each calendar year for the election of directors at such time as shall be provided in or fixed pursuant to authority granted by the bylaws. Failure to hold the annual or other regular meeting *at the designated time* shall not work a dissolution of the corporation or affect otherwise valid corporate acts. If the annual or other regular meeting is not called and held within six months after the designated time, any shareholder may call the meeting at any time thereafter.

(emphasis added). Pennsylvania's Business Corporation Law that concerns shareholder notice is 15 Pa.C.S. § 1704(b) states in relevant part, as follows:

> Notice in record form of *every meeting* of the shareholders shall be given by, or at the direction of, the secretary or other authorized person to each shareholder of record entitled to vote at the meeting at least:
>
> (1) ten days prior to the day named for a meeting that will consider a transaction under Chapter 3 (relating to entity transactions) or a fundamental change under Chapter 19 (relating to fundamental changes); or
>
> (2) five days prior to the day named for the meeting in any other case.

There is no basis under Pennsylvania law for Driver to obtain the requested relief.

17

### iv.    Driver's Claim Is Barred by Laches.

Driver has known since April 1, 2022 that FRBK's Annual Meeting would not take place on May 10.   There is no excuse for its five-week delay in seeking relief from this Court, which has unfairly prejudiced FRBK and its Board by forcing them to respond in a highly constrained time frame to Driver's attempt to compel a shareholder meeting in violation of applicable law.   Pennsylvania law provides that if the bylaws are silent on a meeting date (and FRBK's are), then the meeting simply needs to be held in the calendar year (i.e., by December 31). *See* Bylaws, Art II.  As such, Driver cannot cite Pennsylvania statutory authority that makes its right to the requested relief indisputably clear.   "It is hornbook law that laches consists of two essential elements: (1) inexcusable delay in instituting suit, and (2) prejudice resulting    to    the    defendant    from    such    delay." *See Univ. of Pittsburgh v. Champion Prod. Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982); *In re General Election for District Justice*, 543 Pa. 216, 231, 670 A.2d 629, 636 (1996); *United Brotherhood of Carpenters and Joiners of America, Local 261 v. Pennsylvania Human Relations Commission*, 693 A.2d 1379 (Pa. Cmwlth. 1997). Driver has been aware the annual meeting would be delayed since April 1, 2022, but for no reason waited a month to bring suit. Driver is well aware that if the meeting takes place on May 10, 2022, FRBK would not be able to solicit proxies for its Board-approved slate of director candidates, and shareholders who wish to vote for

those candidates will have to do so in person. Driver purposefully waited to file suit until just before the original date of the Company's Annual Meeting in order to characterize its demand for immediate relief as an "emergency" lawsuit.    In Pennsylvania, it is "a fundamental equitable principle that delay in seeking equitable relief presents grounds to deny such an application."  *See Scattergood v. Perelman*, No. CIV. A. 90-3451, 1990 WL 72801, at \*6 (E.D. Pa. May 29, 1990). Driver should not be rewarded for its gamesmanship.

### 4.    Driver Will Not Suffer Any Irreparable Harm.

Driver will not suffer any irreparable harm as a result of FRBK holding its annual meeting in accordance with federal law after the issuance of audited annual financial statements and the completion of the independent investigation. Postponing a shareholder meeting does not result in harm when the postponement does not impede shareholder franchise.  *See, e.g., In re MONY Group, Inc. S'holder Litig.*, 853 A.2d at 676 (Del. Ch. 2004) (concluding that "[s]etting a new meeting and record date, by itself, does not fall within this category of prohibited acts").[12]

Driver has not offered any explanation as to how postponement of the annual meeting until the results of the independent investigation are released (and FRBK

---

[12] *H.F. Ahmanson & Co.*, 1997 WL 305824 at \*16 (finding a seven week delay in an annual meeting did not frustrate the effective exercise of the shareholders' franchise); *Kidsco Inc. v. Dinsmore*, 674 A.2d 483, 495 (Del. Ch. 1995), *aff'd*, 670 A.2d 1338 (Del. 1995) (denying injunctive relief where bylaw amendment providing the board with an additional twenty-five days to call a special meeting was not enacted for purposes of incumbent entrenchment or the primary purpose of impeding shareholder franchise); *H.F. Ahmanson & Co.*, 1997 WL 305824, at \*12 ("the irreparable harm argument fails because its premise, that the shareholders will be deprived of their right to vote for Ahmanson's director nominees, is incorrect.").

can actually issue its audited annual financial statements) disenfranchises shareholders or causes Driver to suffer harm.  Postponing the annual meeting until after shareholders are able to meaningfully assess the credibility of the allegations against the Incumbent Directors will provide for a director vote that is full, fair, and premised on access to all material information required by law.  *In re MONY Group, Inc. S'holder Litig.*, 853 A.2d at 676; Exchange Act Rule 14a-3(b).

Delay in moving for preliminary relief undercuts any assertion that a movant will suffer irreparable injury.[13]  Here, Driver waited for more than a month to file its request for "emergency" injunctive relief.  As such, there is no basis to find Driver will suffer an "irreparable injury" to sustain a claim for a preliminary injunction given this delay.  *Osborne v. Corning Nat. Gas Corp.*, No. 09-CV-6387T, 2009 WL 2413671, at *3 (W.D.N.Y. Aug. 4, 2009) (holding that twenty-eight days is sufficient to deny an injunction when a sophisticated investor failed to exercise due diligence*); T.J. Smith and Nephew Ltd. v. Consolidated Med. Equip.,Inc.*, 821 F.2d 646 (Fed. Cir. 1987) (finding that delay militated against irreparable injury).

---

[13] *Tough Traveler Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (stating that "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"); *Tough Traveler*, 60 F.3d at 968 (finding that delay "standing alone . . . precludes the granting of preliminary injunctive relief); *The Media Group, Inc. v. Ontel Products Corp.*, No. Civ. 300 Cv. 2034, 2001 WL 169776, *4 (D. Conn. Feb. 14, 2001) (delay of two months after bringing an action warranted a finding of no irreparable injury and denial of a motion for preliminary relief); *Gidatex, S.R.L. v Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (stating that even brief delays may warrant denial of a preliminary injunction); *Zell/MerrillLynch Real Estate Opportunity Partners*, No. 96 Civ, 1445, 1996 WL 125643, at *7 (S.D.N.Y. Mar. 21, 1996) (finding that the delay demonstrated the lack of irreparable harm and, therefore, denying the motion for preliminary injunction).

Without an appropriate delay of the meeting, FRBK shareholders will be forced to vote for directors in the dark and uninformed as to the truth of the allegations made against the Incumbent Directors. Such an outcome is offensive to Pennsylvania law. *Steinberg v. Am. Bantam Car Co.*, 76 F. Supp. 426, 440 (W.D. Pa. 1948) (applying Pennsylvania law) (authorizing postponement of annual meetings "[w]here the stockholders are unable to [timely] investigate the affairs of a corporation"). Driver does not seek court intervention to prevent irreparable harm. Driver seeks court intervention to seal its victory and prevent the dubious "harm" of being denied the fleeting opportunity to force a director vote before the manufactured cloud of uncertainty surrounding the Incumbent directors is cleared - one way or another - by the already-initiated independent investigation.

### 5. Granting Immediate Relief Will Result In Even Greater Harm To FRBK And Its Shareholders.

As noted above, the only "harm" that will come as a result of denying immediate relief in this case is the questionable "harm" that Driver will experience if it is not allowed to fast-track the election process and win essentially unopposed. Granting the requested relief would force FRBK to hold its annual meeting in violation of both 15 Pa.C.S. § 1704(b) - which requires notice to shareholders "five days prior to the day named for the meeting" (impossible for a meeting that Plaintiff is demanding take place tomorrow) - and 17 C.F.R. § 240.14a-3(b), which requires issuance of audited annual financial statements prior to the annual meeting

21

(impossible given that the Crowe will not certify the audited financial statements until the investigation is complete).  Violation of 17 C.F.R. § 240.14a-3(b) could subject FRBK to an SEC investigation and an enforcement action and the resulting penalties as well defending against such an investigation. *Sec. & Exch. Comm'n v. Parklane Hosiery Co., Inc.*, 558 F.2d 1083 (2d Cir. 1977); *In re Trump Hotels S'holder Derivative Litig.*, 96 CIV. 7820 DAB, 2000 WL 1371317, at \*11 (S.D.N.Y. Sept. 21, 2000) ("Section 14(a) provides that it is unlawful to solicit a proxy contrary to rules established by the Securities and Exchange Commission.").

If the Court were to compel FRBK to hold an annual meeting in violation of state and federal law, the Incumbent Directors (or at least the three up for election) would not be able to solicit proxies in support of their candidacies or even campaign for their own election thereby disenfranchising shareholders wishing to vote for the Incumbent Directors.  Exchange Act Rule 14a-3(13) provides that companies like FRBK cannot solicit proxies until audited annual financial statements are issued.[14]

Since FRBK and the Incumbent Directors cannot issue proxies, any shareholder who wishes to vote for the board-approved slate of directors would be required to attend and cast their vote at the shareholders meeting in person, which

---

[14] *Ash.*, 723 F.2d at 1094 ("The rule must warn management that it cannot solicit proxies, receive shareholders' votes, and elect its selected slate of directors without first disseminating the annual report in a timely manner."). The Incumbent Directors also cannot solicit proxies themselves because it may be viewed as an illegal end-run around the SEC rule. *Capital Real Estate Inv'rs Tax Exempt Fund Ltd. P'ship v. Schwartzberg*, 917 F. Supp. 1050, 1061 (S.D.N.Y. 1996) ("facile efforts to circumvent the policies of the Exchange Act will not be permitted.").

may not be practicable or feasible for many of FRBK's shareholders other than those that have given proxies (and FRBK cannot issue proxies). Such vote would be cast without the voting shareholder having access to precisely the type of information that would be contained in FRBK's Annual Form 10-K that the SEC has determined is necessary and appropriate to provide shareholders prior to their voting on an election of directors. FRBK could encouraging its shareholders to vote at any such special meeting because FRBK will not be able to satisfy its proxy obligations.[15]

Forcing FRBK to hold its annual meeting on May 10 or at any time prior to conclusion of the investigation would deprive FRBK of its right to solicit proxies for its own slate of board members thereby disenfranchising all shareholders who wish to vote for FRBK's nominees, but who are unable to attend the Annual Meeting in person in a particular city, on a particular day, at a particular time. *WNH Invs., LLC v. Batzel*, 1995 WL 1799134, at \*1 (Del. Ch. July 20, 1995) (finding that the Individual Defendants breached their fiduciary duty to FRBK by attempting to deprive FRBK of its right to meaningfully solicit proxies of its fellow shareholders in order to remove the Individual Defendants as directors).

### 6.    The public interest does not favor Driver's requested relief.

Driver's requested relief does not protect shareholder voting rights. Granting Driver's request would require FRBK to violate state and federal law and would

---

[15] *See* Exchange Act Rule 14a-2(b)(1)(i) (the exemption from the proxy statement delivery requirements otherwise available for solicitations that do not request a proxy is not available to registrants).

require shareholders to exercise their voting rights while less than fully informed about the candidates from whom they are voting.  The results of the ongoing independent investigation will likely have a significant impact on how shareholders vote at next Annual Meeting and forcing shareholders to cast their votes without that information can hardly be considered as protective of their voting rights.  Where information if known could change the result of a shareholder vote, the public interest requires that the Court permit a postponement of the shareholder meeting. *Cooke*, 334 F. Supp. at 473  (holding that courts of equity, like this one, should, postpone a shareholders meeting in the interests of justice to allow time for shareholders to learn facts and circumstances that pertain to upcoming board elections).  Indeed, the free flow of information is so important to voter franchise, that when available information is flawed or inaccurate, the Court is within its authority to postpone shareholder meetings while such information is corrected.  *Sec. & Exch. Comm'n v. May*, 134 F. Supp. 247, 258 (S.D.N.Y. 1955), *aff'd*, 229 F.2d 123 (2d Cir. 1956) (after granting injunction to correct improper proxy solicitation, postponing shareholder meeting and allowing re-solicitation of proxies in order to avoid shareholder disenfranchisement). "To permit the election of directors . . . without its shareholders having an opportunity to determine whether or not they desire to continue the present management . . . or to substitute therefore a new

management . . . would work a fraud upon the shareholders." *Steinberg*, 76 F. Supp. at 440 (W.D. Pa. 1948).

## IV.     DISCUSSION REGARDING THE PROPER DEFENDANT(S)

Driver is not entitled to the injunctive relief sought in its Motion and its claims fail.  The proper party in this case is not FRBK solely, and any order on this matter would either compel or forbear conduct that is within the power of the board. In cases in Pennsylvania and Delaware in which injunctions were sought to compel immediate annual shareholders' meetings, the directors are almost universally named as defendants, and in only some of the cases, are the corporate entities sued.[16] The only explanation for Driver's tactical decision to sue FRBK and not FRBK's board was to opportunistically take advantage of potential dead-lock at the board level in the hopes that FRBK would be unable to fully respond to the Motion.  The Court should not (and apparently does not) entertain such an opportunistic tactical ploy.

---

[16] *See e.g.*, *Jewelcor Mgmt., Inc.*, 60 Pa. D. & C.4th 391; *Aprahamian*, 531 A.2d 1204; *Stahl*, 579 A.2d 1115; *Kidsco Inc.*, 674 A.2d 483; *In re MONY Group, Inc. S'holder Litig.*, 853 A.2d 661; *H.F. Ahmanson & Co.*, CIV. A. 15549, 1997 WL 305824, at *1

Dated: May 9, 2022                    Respectfully submitted,

                                      **STEVENS & LEE**

                                      */s/Stacey A. Scrivani*
                                      Stacey A. Scrivani, Esq.
                                      (Pa. I.D. No. 84275)
                                      111 N. Sixth Street
                                      P.O. Box 679
                                      Reading, PA 19603 0679
                                      (610) 478 2086
                                      stacey.scrivani@stevenslee.com

                                      *Attorneys for Defendant Republic First*
                                      *Bancorp, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 9, 2022, shortly after the filing

of this Motion with the Court, the undersigned caused a true and correct copy of the

Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary

Injunction and its supporting memorandum of law, exhibits, and proposed order, to

be served on all counsel of record through the Court's electronic notification system.

Dated: May 9, 2022                    Respectfully submitted,

                                      **STEVENS & LEE**

                                      */s/Stacey A. Scrivani*
                                      Stacey A. Scrivani, Esq.
                                      (Pa. I.D. No. 84275)
                                      111 N. Sixth Street
                                      P.O. Box 679
                                      Reading, PA 19603 0679
                                      (610) 478 2086
                                      stacey.scrivani@stevenslee.com

                                      *Attorneys for Defendant Republic First
                                      Bancorp, Inc.*